IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DANIEL O. KIRKLAND, | § | |
| *Plaintiff*, | § | 5-25-CV-00464-FB-RBF |
| vs. | § | |
| CENTRAL INTELLIGENCE AGENCY, | § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

Before the Court is the Motion to Dismiss filed by the Central Intelligence Agency ("CIA"). Dkt. No. 9. All pretrial matters in this case have been referred for disposition pursuant to 28 U.S.C. § 636(b) and Western District of Texas Local Rule CV-72 and Appendix C. Dkt. No. 4. This matter was removed to this Court from 131st Judicial District Court of Bexar County, Texas, pursuant to this Court's jurisdiction over claims against federal officers or agencies. Dkt. No. 1; 28 U.S.C. § 1442(a)(1). For the reasons discussed below, it is recommended that Defendant CIA's Motion to Dismiss, Dkt. No. 9, be **GRANTED**, and that the case be dismissed without prejudice.

**Background**

Plaintiff Daniel Kirkland ("Kirkland") originally filed the instant action in the 131st Judicial District Court of Bexar County, Texas, alleging he has been the target of a 15-year-long stalking operation. Dkt. No. 1-1 at 4. Kirkland alleges that his stalkers have hacked his social

media accounts, followed him in car and on foot, and installed surveillance technologies in his "home, vehicle, computer, and so forth." *Id*. at 4-5. Kirkland alleges he was at first unable to ascertain who was stalking him, but that "[i]n late 2013, subtle signs and indicators surfaced seemingly hinting at CIA involvement in the operation." *Id*. at 5. Kirkland now brings the instant action, seeking (1) "that the Court issue an order expressly banning the CIA from collecting intelligence or performing intelligence operations on the plaintiff . . . and refrain from any such activity in the future," and (2) "that the court issue an order demanding that CIA the delete, discard, or destroy all information or intelligence collected on the plaintiff, and refrain from collecting any such information or intelligence in the future." *Id*. at 6.

The CIA removed the case to federal court, *see* Dkt. No. 1, and then filed a Motion to Dismiss, *see* Dkt. No. 9. The motion urges that Plaintiff: (1) lacks standing because there is no live "case or controversy" presented; (2) has not identified any waiver of sovereign immunity; and (3) has failed to plead specific facts showing any entitlement to relief. *Id*.

## Analysis

The Court agrees with the CIA's standing argument. The Court therefore does not address the CIA's second and third arguments. Arguments about constitutional standing, like the CIA's argument here, implicate Federal Rule of Civil Procedure 12(b)(1), which allows a party to raise the defense of lack of subject matter jurisdiction in the responsive pleading. Plaintiff, as the party asserting jurisdiction, bears the burden of establishing its existence. *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012). "A plaintiff's failure to establish one of the three elements of Article III standing deprives federal courts of jurisdiction to hear the plaintiff's suit," and such a failure warrants dismissal of a plaintiff's claim. *Delta Com. Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*, 364 F.3d 269, 273 (5th Cir. 2004).

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). An essential component of the case-or-controversy requirement is that a plaintiff must have standing "to invoke the authority of a federal court." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (internal quotations omitted). The doctrine of standing requires the plaintiff to have a "personal stake in the outcome of [a] controversy" that justifies the court's exercise of remedial powers on the plaintiff's behalf. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017) (citations omitted). To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 150 (2010) (citing *Horne v. Flores*, 557 U.S. 433, 445 (2009)). Regarding threats of future injury, the "threatened injury must be certainly impending to constitute injury in fact," and "[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (citation omitted).

The Supreme Court in *Clapper* spoke directly on how standing operates in cases where a plaintiff alleges unlawful government surveillance. *See generally id*. Regarding unlawful government surveillance that is alleged to have already occurred, the court in *Clapper* rejected plaintiffs' contention that they were entitled to relief for costs incurred as a result of *"their subjective fear of surveillance"* for which they adduced no evidence. *Id*. at 419. Without such evidence, the costs at issue were not "fairly traceable" to the injury complained of. *Id*. Regarding surveillance that may be conducted in the future, *Clapper* requires a plaintiff to do more than

speculate that the government will, with "objectively reasonable likelihood," unlawfully intercept their communications "at some point in the future." *Id*. at 407, 410-14. *Clapper* thus rejected an argument for standing based on suspicion of imminent, impending surveillance with "no actual knowledge of the Government's [FISA] targeting practices." *Id*. at 411. A plaintiff cannot "merely speculate and make assumptions about whether their communications with their foreign contacts will be acquired under [the statute complained of]." *Id*. at 411.

The Court in *Clapper* also spoke to the heightened requirements for standing in cases alleging unlawful action by the other coordinate branches of government. *See id*. at 408-09. The "standing inquiry has been especially rigorous when reaching the merits of the dispute would force [a federal court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997). The Supreme Court has "often found a lack of standing in cases in which the Judiciary has been requested to review actions of the political branches in the fields of intelligence gathering and foreign affairs." *Clapper*, 568 U.S. at 409 (citing *United States v. Richardson*, 418 U.S. 166, 167-170 (1974) (plaintiff lacked standing to challenge the constitutionality of a statute permitting the Central Intelligence Agency to account for its expenditures solely on the certificate of the CIA Director); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 209-211 (1974) (plaintiffs lacked standing to challenge the Armed Forces Reserve membership of Members of Congress); *Laird v. Tatum*, 408 U.S. 1, 11–16 (1972) (plaintiffs lacked standing to challenge an Army intelligence-gathering program)).

Kirkland alleges here merely the kinds of speculative fear of surveillance that the Supreme Court in *Clapper* ruled are inadequate to establish standing. Indeed, Kirkland has not alleged a single specific fact that, if substantiated, would be capable of showing that the CIA has

spied on, surveilled, or targeted him, or that it intends to do so. Instead, Kirkland merely speculates about "subtle signs and indicators" that according to his own allegations merely "surfaced seemingly hinting at CIA involvement in the operation." Dkt. No. 1-1 at 5. Kirkland, moreover, acknowledges that he has no evidence tying this supposed surveillance to the CIA, as opposed to some other group, organization, or entity. *Id*. This is a "subjective fear" upon which no injury fairly traceable to the CIA's alleged surveillance can be based, and it involves only speculative fears of future surveillance with "no actual knowledge" of the CIA's targeting practices. *See Clapper*, 568 U.S. at 410-14, 418-19. Plaintiff Kirkland alleges nothing that would suffice to show an "objectively reasonable likelihood" of government surveillance, and even if he did, this would be insufficient to survive the CIA's standing challenge under *Clapper*. *Id*. Plaintiff has therefore failed to establish standing, meaning he cannot show this Court has jurisdiction.

Finally, affording Kirkland an opportunity to amend the pleadings is not warranted here because any amendment would be futile, he has already pleaded his best case, and a Federal Rule of Civil Procedure 12(b)(1) dismissal is without prejudice. *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam) (dismissal of pro se complaint without opportunity to amend permitted if "the plaintiff has alleged his best case, [] or if the dismissal [i]s without prejudice"); *Stripling v. Jordan Prod. Co*., 234 F.3d 863, 872-73 (5th Cir. 2000)); *see also Spivey v. Chitimacha Tribe of La*., 79 F.4th 444, 449 (5th Cir. 2023) (Rule 12(b)(1) dismissal is without prejudice). Kirkland has pleaded his best jurisdictional case, and it is insufficient. Moreover, he has already acknowledged that he has no evidence the CIA is surveilling him or has any plans to do so. By his own words, he at most levels his accusations based on unidentified "subtle signs and indicators" that only "hint[] at CIA involvement." Dkt. No. 1-1 at 5.

**Conclusion**

For the reasons discussed above, it is recommended that the District Court **GRANT** the CIA's Motion to Dismiss, Dkt. No. 9, and dismiss the case without prejudice.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED.**

**SIGNED** this 14th day of October, 2025.

**RICHARD B.  FARRER**
**UNITED STATES MAGISTRATE JUDGE**